UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELORIS FRAZIER-WHITE,

     Plaintiff,

v.                                                    Case No: 8:13-cv-1854-T-36TBM

DAVID GEE,

     Defendant.

_____/

## ORDER

This cause comes before the Court upon the Motion for Summary Judgment filed by Defendant David Gee, in his official capacity as Sheriff of Hillsborough County ("Sheriff") (Doc. 28). Plaintiff Deloris Frazier-White ("Frazier") filed a response in opposition to the Motion (Doc. 40). The Sheriff replied in further support of the motion (Doc. 47). Upon review of the summary judgment briefing, the Court ordered the parties to submit additional briefing as to the Court's subject matter jurisdiction over certain of the claims. Doc. 58. The parties complied. Docs. 59, 60. The Court, having considered the parties' submissions, including deposition transcripts, declarations, affidavits, memoranda of counsel, and being fully advised in the premises, will now grant Defendant's Motion for Summary Judgment as to Counts II through X of the Amended Complaint.

## I.        STATEMENT OF FACTS[1]

This action arises from the termination of Frazier's employment with the Hillsborough County Sherriff's Office ("HCSO") in June 2011. Frazier began working at the HCSO in 1990,

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, stipulated facts, affidavits, and deposition testimony.

where she remained continuously employed until her termination.  *See* Doc. 41-1.  Throughout the years, she held various job titles, including but not limited to Records Management Specialist II, Clerk II, and Clerk III.  *See* Doc. 41-2.  In 2010, Frazier was employed as a Community Service Officer ("CSO").  *See* Doc. 29 ("Frazier Dep.") at 23.  As a CSO, Frazier performed various law enforcement support duties that do not require the direct involvement of a sworn officer, such as screening for concealed weapons or explosive devices, overseeing the activities of inmates performing various work assignments, and controlling the access of pedestrians and vehicular traffic into facility grounds.  *See* Doc. 33-4.

On July 29, 2010, Frazier was involved in an accident while working at the Falkenburg Road Jail.  *See* Doc. 41-3.  As she was passing through a secure portal, a large, heavy metal door unexpectedly began to shut, pinning her right arm against her right rib cage and contacting her right bottom cheek just behind the hip bones.  *See id.*  Frazier was taken to the University Community Hospital, where she was diagnosed with and treated for contusions/sprains of the right shoulder, right wrist, right knee, and chest wall.  *See* Doc. 29-1 ("Comp. Order") at 3.

After her injury, Frazier was placed on disability status and assigned to a temporary light duty job in the Inactive Records Department while she recovered.  Docs. 41-2; Frazier Dep. at 34.  Her responsibilities included breaking down released files, pulling documents from folders, scanning documents, and preparing documents for storage.  *See* Doc. 39-1 ("Frazier Aff.") ¶ 10.  She worked full time in light duty at the Inactive Records Department until her termination from the HCSO.  *See* Frazier Dep. at 34.

As defined by the HCSO's General Standard Operating Procedure No. 213.00, "light duty" is "[a] status in which an employee, not medically capable of working their normal job assignment, may temporarily work at their full salary."  Doc. 34-1 ("SOP") at 1.  The SOP provides that if an

2

employee reaches an aggregate of 270 days of light duty within a rolling two year calendar, he or she is subject to review of employment in a due process hearing. *See id.* at 2-3. It further provides that "[i]n the absence of an extension of leave, failure to return to work . . . shall result in dismissal." *Id.* at 1. It notes that any such dismissal is not disciplinary in nature, but rather for the good of the HCSO so that it may hire replacement personnel. *See id.*

Frazier sought treatment from various doctors while she was on light duty. On September 30, 2010, she saw Dr. Stuart A. Goldsmith, an orthopedic surgeon. *See* Comp. Order at 4. Dr. Goldsmith diagnosed Frazier with contusion/sprain/strain of the right shoulder, right hip, and lower back. *See id.* As Frazier was already on light duty status, Dr. Goldsmith left her work status unchanged. *See id.* However, Dr. Goldsmith prescribed physical therapy. *See id.* Frazier returned for follow-up visits in October, November, January, and February. *See id.* Each time, her condition was noted as unchanged. *See id.* Dr. Goldsmith discharged her in February 2011, noting that "[s]he has reached a point of maximum medial [sic] improvement [("MMI")]. She has no restrictions from an orthopaedic standpoint. She does not require any further diagnostic tests." *Id.*

While Frazier was being treated by Dr. Goldsmith, she also began treatment with Dr. Thomas Newman, a neurologist, in December 2010. *See id.* at 5. Dr. Newman recommended that Frazier undergo an MRI of the cervical spine, as well as an EMG and nerve conduction study of the right arm. *See id.* Frazier did not undergo the MRI at that time because she was claustrophobic. *See* Frazier Dep. at 81. However, she proceeded with the EMG and nerve conduction study. *See* Comp. Order at 5. The results of those tests were essentially normal. *See id.* In January 2011, Dr. Newman placed Frazier at MMI with no impairment rating and no restrictions. *See id.*

On January 6, 2011, Richard Swann, the Risk Management Director at the HCSO, wrote Frazier a letter notifying her of the HCSO's disability leave policy. *See* Doc. 29-6. The letter

3

warned Frazier that, as of that date, she had reached an aggregate of 162 days in a disabled status. *See id.* It added that the HCSO expected her to return to full duty on April 24, 2011, but that she could request an extension of her disabled status if her condition qualified for Family Medical Leave. *See id.* It finally noted that if she were unable to return to full duty status, she should contact Swann to discuss alternatives, including reasonable accommodation of her condition and civil service application for other job opportunities in the HCSO for which she may be qualified. *See id.*

After being placed at MMI without restrictions by Drs. Goldsmith and Newman, Frazier, evidently disagreeing with the diagnosis, sought yet another medical opinion, and on March 8, 2011, she consulted Dr. Thomas L. Greene, an orthopedic hand surgeon, regarding her upper extremity complaints. *See* Comp. Order at 5. Following that initial visit, Dr. Greene indicated that Frazier had not reached MMI, restricted her to light duty, and recommended that she undergo an MRI of the cervical spine. *See* Doc. 29-10.

On April 3, 2011, Frazier sent a hand-written letter to Swann. *See* Doc. 29-5. In the letter, she stated that she was continuing to have diagnostic procedures "to find out why [she was] not 100% better due to the work-related injury." *Id.* She also requested an extension to continue to receive care. *See id.* The letter did not state the length of the requested extension, nor did it request any other accommodations. *See id.*

On April 11, 2011, the HCSO sent Frazier another letter regarding her leave. *See* Doc. 29-9. The letter again notified her of the HCSO's disability leave policy, and stated that, as of that date, she had reached an aggregate of 256 days in a disabled status. *See id.* The letter also again informed Frazier that if she could not return to full duty, she should contact Swann to discuss possible reasonable accommodation of her condition or civil service application for other job

opportunities in the HCSO for which she may be qualified.  *See id.*  On April 15, the HCSO sent

Frazier a notice of due process hearing scheduled for April 27.  *See* Doc. 31-6.

On April 15, 2011, Frazier requested a Family Medical Leave Act ("FMLA") application.

*See* Doc. 41-16.  Shortly thereafter, on April 18, Frazier submitted a "Certification of Health Care

Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" completed

by Dr. Greene.  Doc. 29-8.  In it, Dr. Greene indicated that Frazier's condition would not prevent

her from performing her light duty job functions.  *See id.*  Dr. Greene further noted that Frazier

would not be incapacitated for a single continuous period of time due to her medical condition.

*See id.*  However, Dr. Greene stated that Frazier would be required to attend medically necessary

follow-up treatment appointments or work on a reduced schedule.  *See id.*  On April 22, Frazier

notified her immediate supervisor that she had put in for FMLA.  *See* Doc. 30-11.  Despite this,

the HCSO never at any time notified Frazier of her rights under the FMLA or designated her leave

as FMLA.  *See* Frazier Aff. ¶¶ 9, 19.

On April 20, 2011, Frazier underwent the cervical spine MRI recommended by Dr. Greene.

*See* Comp. Order at 5.  The MRI revealed a number of disc abnormalities in Frazier's spinal cord.

*See id.*  However, after evaluating the MRI results, Dr. Greene concluded that Frazier had reached

MMI for her right arm as of April 26, 2011, with no impairment or restrictions.  *See id.*  The next

day, Frazier met with Shayne Hassell, a workers compensation representative, and Nikki Smith, a

claims and contract manager, to discuss her medical treatment and the severity of her condition.

*See* Doc. 34 ("Smith Decl.") ¶ 11.  She provided Hassel and Smith with a copy of her MRI report.

*See id.*  However, at no time during the meeting did Frazier claim a disability or identify any

reasonable accommodations that would assist her in performing the essential functions of her job.

*See id.*  At that meeting, Frazier was informed that her due process hearing was reset for May 24, 2011.  *See* Frazier Aff. ¶ 17; Doc. 29-4 ("Hearing Tr.").

On May 11, 2011, Frazier returned to Dr. Greene complaining of neck pain.  *See* Comp. Order at 5.  Dr. Greene diagnosed cervical disc disorder and recommended that Frazier be seen by either an orthopedist or neurosurgeon.  *See id.* at 6.  In making that recommendation, however, Dr. Greene was unaware that Frazier had already seen Dr. Newman.  *See id.*  In any case, Dr. Greene's opinion regarding MMI and permanent impairment remained unchanged.  *See id.*  Around this time, Dr. Newman received a copy of the MRI report, and also reiterated that his opinions relating to Frazier's right arm complaints remained unchanged.  *See id.* at 6-7.

The non-disciplinary due process hearing pursuant to the SOP occurred on May 24, 2011. *See* Hearing Tr.  During the hearing, Frazier stated that she didn't know when or even if she could return to full duty as a CSO.  *See id.* at 8-9.  In response, the panel found that Frazier could no longer perform the essential functions of her CSO job, informed Frazier that her temporary light duty position was no longer available, and stated that they would therefore be recommending her termination.  *See id.* at 12-13.  The panel made clear that the recommendation for dismissal was non-disciplinary.  *See id.* at 14.

After the panel informed Frazier of its recommendation to terminate, Frazier asked whether there was an option of her doing something else.  *See id.* at 16.  Swann responded by stating that if Frazier could find a position that she could work in a full duty capacity with her current medical condition, she would be considered for that position.  *See id.* at 17.  He added that it was not the HCSO's responsibility to find positions for employees, and that it was the responsibility of the employee to find another position that they were capable of performing.  *See id.*  On May 25, 2011,

the Sherriff memorialized Frazier's dismissal for non-disciplinary reasons, effective June 10, 2011. *See* Doc. 41-2 ¶ 3.

On May 27, 2011, Frazier began treatment with Dr. Larry Fishman, a neurosurgeon, to whom she had been referred by her personal primary care physician. *See* Comp. Order at 7; Doc. 29-12. After she described her symptoms to him, Dr. Fishman recommended that she undergo spinal surgery. *See* Comp. Order at 7. Frazier ultimately underwent the surgery. *See id.*

At no time after the hearing did Frazier apply for any vacant positions because, according to her, she was told not to return to the HCSO's facilities. *See* Frazier Dep. at 54-55. Frazier further testified that she could not apply for vacant positions online because her medical status had been in a life-threatening position at that time and that she had needed surgery right away. *See id.* at 55. As it turns out, throughout the duration of and after Frazier's light duty employment, there had been a number of open positions at the HCSO, the essential duties of which Frazier may have been able to perform. *See* Docs. 41-21; 44-2 and 44-3; 44-4; Frazier Aff. ¶ 14. However, consistent with Swann's statement at the hearing, the HCSO never identified the full range of alternative positions that White could perform, or determined whether she could perform the essential functions of any available position with or without reasonable accommodation. See Frazier Aff. ¶¶ 12-14.

Frazier alleges that her discharge was unlawful. Frazier originally filed suit in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida. See Doc. 1. In her Complaint, Frazier asserted, *inter alia*, a claim for workers' compensation retaliation in violation of Fla. Stat. § 440.205. *See* Doc. 2 ¶¶ 24-29 (Count I). Defendant subsequently removed the action to this Court on the basis of federal question jurisdiction. *See* Doc. 1; *see also* 28 U.S.C. § 1331. Defendant thereafter filed a motion to dismiss, or, in the alternative, for a more definite statement. *See*

7

Doc. 6.  In response, Frazier sought to amend her Complaint.  *See* Doc. 16.  The Court granted Frazier leave to amend and denied Defendant's motion without prejudice.  *See* Doc. 19.

In the Amended Complaint (Doc. 20), Frazier asserts claims for workers compensation retaliation in violation of Fla. Stat. § 440.205 (Count I); interference and retaliation under the FMLA (Counts II and III); disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA") (Counts IV and VIII); retaliation under the ADA and the FCRA (Counts V and X); and race discrimination in violation of Title VII, 42 U.S.C. § 1981, and the FCRA (Counts VI, VII, and IX).  Defendant now argues that she is entitled to judgment as a matter of law as to each of these claims.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In determining whether a

genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## III.   DISCUSSION

### A.   Disability Discrimination under the ADA and FCRA (Counts IV and VIII)

The Americans with Disabilities Act prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Earl v. Mervyns, Inc.* 207 F.3d 1361, 1365 (11th Cir. 2000). The FCRA likewise prohibits employment discrimination on the basis of an individual's handicap. *See* Fla. Stat. § 760.10. Disability discrimination claims under the FCRA are analyzed under the ADA. *See Wimberly v. Securities Tech. Grp., Inc.*, 866 So. 2d 146, 147 (Fla. 4th DCA 2004). "A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 Fed. App'x 901, 906 (11th Cir. 2009) (citation omitted).

Here, the parties do not dispute that Frazier is "disabled" within the meaning of the ADA. The Court will therefore analyze the remaining elements under the separate theories of disability discrimination that Frazier has advanced—namely, disparate treatment/impact, and failure to accommodate.

### 1.   Disparate Treatment/Impact

ADA discrimination claims for intentional discrimination or disparate impact based on circumstantial evidence are evaluated under the *McDonnell Douglas*[2] burden-shifting analysis. *See Cremeens v. City of Montgomery, Ala.*, 427 Fed. App'x 855, 857 (11th Cir. 2011). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of disability discrimination. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). To establish a prima facie case of discrimination, a plaintiff must show that "(1) [she] is disabled; (2) [she] is a qualified individual; and (3) [she] was subjected to unlawful discrimination because of her disability." *Howard v. Steris Corp.*, 550 Fed. App'x 748, 751 (11th Cir. 2013). Once the plaintiff sets forth her prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Cleveland*, 369 F.3d at 1193. If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the proffered reason is unworthy of credence and a pretext for unlawful discrimination. *See id.*

Here, to the extent that Frazier's claims are premised on disparate treatment or disparate impact, they must fail as a matter of law. First, with regard to the theory that Defendant's decision to terminate her as a CSO constituted unlawful disparate treatment or disparate impact, Frazier has failed to set forth a prima facie case. Specifically, Frazier has failed to demonstrate that she is a "qualified individual" in relation to that job. A "qualified individual" is "someone with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Cremeens*, 427 Fed. App'x at 857 (quoting 42 U.S.C. § 12111(8)) (quotation marks omitted). "'Essential functions' are the

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

fundamental job duties of a position that an individual with a disability is actually required to perform." *Id.* (quotation marks and citation omitted).  Frazier does not dispute that she was unable to perform the duties of a CSO.  *See* Frazier Dep. at 87 ("Q:  So you could not have done the work of a CSO; is that correct?  A:  Yes.").  Frazier also does not dispute that the only accommodation she requested in relation to her employment as a CSO was an indefinite extension of light duty status—which is not a "reasonable accommodation" as a matter of law, *see Santandreu v. Miami Dade County*, 513 Fed. App'x 902, 905 (11th Cir. 2013).  Frazier does not set forth any other accommodation, reasonable or otherwise, that would allow her to perform the essential functions of a CSO.  Any disparate treatment or disparate impact claim premised on Defendant's decision to terminate her as a CSO therefore fails as a matter of law.

Second, also failing as a matter of law is the theory that Defendant's failure to hire Frazier for other positions within the HCSO constituted unlawful disparate treatment or disparate impact. Even assuming that Frazier has set forth a prima facie case (i.e., that she was a "qualified individual" in relation to some of these jobs and that Defendant declined to hire her for them on the basis of her disability)[3], Defendant has offered a legitimate, non-discriminatory reason for Frazier's failure to obtain employment in another position—namely, that she did not apply for any of them.  Frazier has failed to provide any evidence that this reason is pretextual or not worthy of credence.  Indeed, she does not dispute the fact that she did not apply for any open positions. Rather, she claims only that she could not apply for them because her medical status had been in a life-threatening position and that she had needed surgery right away.  Because this assertion fails to impeach Defendant's proffered legitimate, non-discriminatory reason, any disparate treatment

---

[3] The Court makes no finding with regard to whether Frazier has set forth an adequate prima facie case in relation to this theory.

or disparate impact claim premised on Defendant's failure to hire her for other positions within the HCSO fails as a matter of law.

Frazier does not advance any other theories of disparate treatment or disparate impact. Accordingly, to the extent her claims are premised on disparate treatment or disparate impact, they fail as a matter of law.

### 2. Failure to Accommodate

An ADA discrimination claim alleging failure to make reasonable accommodations is not analyzed under the *McDonnell Douglas* burden-shifting analysis. *See Nadler v. Harvey*, Case No. 06-12692, 2007 WL 2404705, at *9 (11th Cir. Aug. 24, 2007). Rather, all that is required is that the plaintiff demonstrate that she is an "otherwise qualified disabled individual within the meaning of the Act and that [the] defendant has not provided a reasonable accommodation." *Id.*; *see also McKane v. UBS Financial Servs. Inc.*, 363 Fed. App'x 679, 681 (11th Cir. 2010). Upon such a showing, the defendant may then establish the affirmative defense of undue hardship. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A)).

Here, Frazier appears to advance two theories regarding Defendant's alleged failure to accommodate her disability. First, Frazier appears to suggest that Defendant failed to accommodate her when it did not consider providing her with a "fixed term medical leave option of medical care" or waive the civil service application process.[4] Doc. 40 at 10, 12. Second, Frazier contends that Defendant refused to engage in the interactive process. *Id.* at 11-12. Both theories, however, fail as a matter of law.

---

[4] Frazier does not explicitly advance the civil service application waiver theory, but implies it by arguing that her request for reassignment was "reasonable" despite admitting that she did not apply for any of the open positions and noting that Defendant had in the past transferred her without requiring an application.

To begin with, Frazier's suggestion that Defendant should have considered offering her an additional fixed term medical leave option fails because Frazier did not specifically request this accommodation.  "[A] plaintiff cannot maintain a claim of disability discrimination based on [her] employer's failure to provide a reasonable accommodation unless [she] specifically demanded such an accommodation."  *Branscomb v. Sec'y of Navy*, 461 Fed. App'x 901, 905 (11th Cir. 2012).  Indeed "the ADA provides no cause of action for failure to investigate possible accommodations."  *McKane*, 363 Fed. App'x at 681 (quotation marks, citation, and alteration omitted).   It is undisputed that the only additional medical leave sought by Frazier was one that was indefinite, which, as a matter of law, is not an accommodation that is reasonable.  Similarly, Frazier failed to request an exemption from the civil service application process.  Frazier therefore cannot claim that she was unlawfully denied these purportedly reasonable accommodations when she never requested them to begin with.

Frazier's assertion that Defendant refused to engage in the interactive process also fails.  It is undisputed that Defendant initiated the process by reaching out and sending Frazier multiple letters advising her to contact Swann to discuss reasonable accommodation of her condition and civil service application for other job opportunities.  Docs. 29-6; 29-9.  Prior to her hearing, however, Frazier never sought to discuss available job opportunities with Swann or anyone else.  And despite knowing how to apply for these jobs, Frazier decided not to do so.  The only instance that Frazier ever attempted to engage in the interactive process was at her hearing when she asked whether there was something else she could do, after the board informed her of its decision to terminate her.  The undisputed facts thus reveal that it was *Frazier* who refused to participate in the interactive process that Defendant sought to initiate.

Frazier argues that she was not required to participate in the interactive process or to submit applications for any jobs because doing so would have been futile.  It is true that "a non-applicant may [] establish a prima facie case by showing that she refrained from applying due to a justifiable belief that the employer's discriminatory practices made application a futile gesture."  *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002).  This argument fails, however, because there is no evidence that Frazier's purported belief in the futility of the process was justifiable.  "To have a 'justifiable belief' for purpose of this exception to the application requirement, a person must demonstrate:  (1) that she had a real and present interest in the job for which the employer was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices."  *Id.* (citation omitted).

Here, Frazier has failed to set forth any evidence that would satisfy either element of "justifiable belief."  With regard to the first element, the undisputed evidence reveals that Frazier demonstrated no interest, much less any interest that was real or present, in any alternative job prior to her hearing.  And even at her hearing, Frazier demonstrated only a vague interest in some unspecified other option, but not for any specific position.  With regard to the second element, Frazier asserts that she was deterred from applying for other positions because of Swann's statement at the hearing that it was her responsibility to find and apply for a position for which she believed she was qualified.  However, this statement fails to evidence the futility of either the interactive process or the civil service application process.  Rather, this statement indicates at most that Frazier needed to be an active participant in the interactive process.  Moreover, even if this statement somehow deterred Frazier, it wholly fails to explain why she did not participate in the

interactive process or apply for any other jobs while she was on light duty for a period of *ten months* prior to her hearing.

The circumstances of this case are therefore readily distinguishable from that in *Adams v. Henderson*, 45 F. Supp. 2d 968, 979 (M.D. Fla. 1999) (denying defendant's motion for summary judgment as to failure to accommodate claim because plaintiff had applied for a position with civil service and had "repeatedly informed Defendants, all the way up his chain of command, that he wanted to go back to work and was willing to transfer to another position"). No reasonable juror could find that the board's refusal to consider the vague, single-sentence request made by Frazier during the latter stage of her due process hearing constituted a refusal to engage in the interactive process or demonstrated that the process was futile. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) ("Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee . . . and the employee's actions cause a breakdown in the interactive process."); *Branscomb*, 461 Fed. App'x at 905 (granting defendant's motion for summary judgment as to failure to accommodate claim despite plaintiff's request on the day of his termination that he be reassigned to a position as a security guard, noting that "he did not offer evidence that he was qualified for this position, was physically capable of performing this position, or that it was vacant").

In sum, the undisputed evidence reveals that Frazier has failed to advance any cognizable theory of disability discrimination under the ADA or the FCRA. The Court will therefore grant Defendant's motion for summary judgment as to Counts IV and VIII.

**B.      Retaliation under the ADA and FCRA (Counts V and X)**

The ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a).  ADA retaliation claims are assessed under the same framework for retaliation claims arising under Title VII.  *See Stewart*, 117 F.3d at 1287.  "To establish a *prima facie* case of retaliation, a plaintiff must show:  (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Id.* (citation omitted).  "Once a *prima facie* case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." *Id.* (citation omitted).  "The plaintiff must then demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.* (citation omitted).  A claim for retaliation under the FCRA is analyzed according to the same framework.  *See Duble v. FedEx Ground Package Sys., Inc.*, 572 Fed. App'x 889, 895 (11th Cir. 2014).

Here, Frazier has failed to establish a prima facie case of retaliation under the ADA or the FCRA.  The parties do not dispute that Frazier engaged in statutorily protected expression by requesting an accommodation—namely, another position with Defendant.  The parties also do not dispute that Frazier suffered an adverse employment action when she was terminated from her position as CSO.  However, Frazier has failed to establish a causal link between the protected expression and the adverse action.  While it is true that close temporal proximity can establish a causal connection, *see Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999), here, there can be no causal connection because Frazier engaged in the statutorily protected expression *after* she suffered the adverse action.  Indeed, it is undisputed that Frazier made her request for accommodation only after the board had already informed her of its decision to

16

terminate her.  *See* Hearing Tr. at 12, 16.   Accordingly, her request for accommodation could not have been a cause of her termination.

Moreover, even assuming *arguendo* that Frazier has established a prima facie case, Defendant has offered a legitimate, non-discriminatory reason for her termination—namely, that she was physically unable to perform the essential duties of CSO, with or without reasonable accommodation.  Defendant adds that it was simply carrying out the process established by its policy.  Frazier has not set forth any evidence that would indicate that these reasons are pretext for unlawful retaliation.  Indeed, Frazier was made aware of the timing and nature of the due process proceedings well before she made any request for accommodation.  Defendant is therefore entitled to judgment as a matter of law as to Counts V and X.

### C.        FMLA Interference and Retaliation (Counts II and III)

The FMLA permits an eligible employee to take up to twelve weeks of unpaid leave from work in any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D). Two types of claims may be brought under the FMLA—interference claims, "in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act," and retaliation claims, "in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act."  *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).

The parties do not dispute that Frazier is an "eligible employee" within the meaning of the FMLA or that she had a serious health condition that rendered her unable to perform the functions of her position.  The Court will therefore proceed to determine whether the evidence, when viewed in the light most favorable to Frazier, along with all reasonable inferences, would allow a

reasonable juror to find in her favor on either a claim for FMLA interference or a claim for FMLA retaliation.

### 1.    FMLA Interference

"To state a FMLA interference claim, a plaintiff must demonstrate that [she] was entitled, under the FMLA, to a benefit that [she] was denied." *Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006). "The employee need not allege that [her] employer intended to deny the benefit—'the employer's motives are irrelevant.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Here, Frazier argues that Defendant interfered with her FMLA rights by failing to provide FMLA leave; terminating her while being aware of her need for leave; and failing to timely notify her of her FMLA rights. For various reasons, each of these theories must fail as a matter of law.

Frazier's first two theories are apparently premised on her purported need for FMLA leave in connection with the surgery recommended by Dr. Fishman. Indeed, Frazier asserts in her opposition brief that she "advised Human Resources/Risk Management *of her upcoming surgery* in mid-April, and she submitted FMLA paperwork on April 18, 2011. However, instead of . . . designating leave as FMLA or complying with the FMLA, Defendant summarily terminated Frazier-White's employment." Doc. 40 at 15 (emphasis added). These theories fail because these bald factual assertions are wholly undermined by the evidence in the record. It is undisputed that the only surgery Frazier underwent was the procedure recommended by Dr. Fishman. It is also undisputed that Frazier was first treated by Dr. Fishman on May 27, 2011, three days after her due process hearing. Frazier therefore could not have advised Human Resources or Risk Management in mid-April regarding any surgical procedure because she was not aware of her need for surgery at that time. Frazier likewise could not have requested FMLA leave in relation to her surgery on

April 18 or at any time prior to Defendant's decision to terminate her.  And Defendants accordingly could not have failed to provide FMLA leave in relation to the surgery or even been aware of her need for leave relating to the surgery prior to terminating her.

Moreover, although Frazier did submit FMLA paperwork on April 18, 2011, the undisputed evidence reveals that she received all the leave she asked for.  Indeed, in her April 18 application, she sought leave only to attend periodic follow-up treatment appointments.  *See* Doc. 29-8.  She did not seek leave for a single, continuous period of time.  *See id.*  She was never denied time off for medical appointments and kept all of her appointments.  *See* Frazier Dep. at 62-63.  She never sought any other form of FMLA leave. *See id.* at 82-83.  Simply put, there is no evidence that Defendant ever denied Frazier any FMLA leave that she actually requested.

Frazier's third theory, that Defendant interfered with her FMLA rights by failing to timely notify her of these rights, must also fail.  Critically, as Defendants note, this theory is not fairly alleged anywhere in the Amended Complaint.  *See* Doc. 20 ¶ 35 (alleging only that "Defendant interfered with Plaintiff's FMLA rights by terminating her employment while she was on leave").  Rather, this theory was raised for the first time at summary judgment.  It is therefore not properly before the Court.  *See, e.g.*, *Cruz v. Advance Stores Co., Inc.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012) (rejecting a theory of negligence because plaintiff raised it for the first time in his response brief, holding that "a party may not raise a new theory for the first time in response to a summary judgment motion"); *Arthur v. Thomas*, Case No. 11-cv-438, 2014 WL 466143, at *4 (M.D. Ala. Feb. 5, 2014) (same).  Defendant was not given fair notice that this theory of FMLA interference was at issue in the case, and Frazier cannot now amend her complaint in her response to the motion for summary judgment, *see Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Because there is no genuine issue of material fact that Defendant did not interfere with Frazier's FMLA rights to the extent that any such theories were properly raised in the Amended Complaint, the Court will grant Defendant's motion for summary judgment as to Count II.

2.    *FMLA Retaliation*

The burden shifting framework established by *McDonnell Douglas* applies to claims for FMLA retaliation based on circumstantial evidence.  *See Strickland*, 239 F.3d at 1207.  To state a prima facie case for FMLA retaliation, a plaintiff must show that "(1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse employment action."  *Word v. AT & T*, 576 Fed. App'x 908, 916 (11th Cir. 2014).  Notably, in contrast to a claim for FMLA interference, a plaintiff asserting a claim of FMLA retaliation faces the increased burden of establishing that her employer's actions were motivated by an impermissible retaliatory or discriminatory animus.  *See Diehl v. Bank of Am., N.A.*, 470 Fed. App'x 771, 776 (11th Cir. 2012).  "After the plaintiff establishes a prima facie case, the employer must provide a legitimate, nondiscriminatory reason for the adverse action."  *Word*, 576 Fed. App'x at 916 (citation omitted).  If the employer does so, the burden then shifts back to the plaintiff to prove that the reason was merely pretext for retaliation.  *See id.* at 917.

Here, the parties do not dispute that Frazier engaged in statutorily protected conduct when she requested FMLA leave or that she suffered an adverse employment action when she was terminated from her position as CSO.  However, Frazier's claim fails because she has not established a causal connection between the protected conduct and the adverse employment action.  Further, Defendant has set forth a legitimate, nondiscriminatory reason for the adverse action that Frazier has not rebutted.

20

First, Frazier's claim that she was terminated in retaliation for letting Defendant know of her upcoming need for surgery is without merit.  Defendant decided to terminate her employment at the hearing on May 24, 2011.  However, as discussed in Section III.C.1, *supra*, Frazier did not learn of her need for surgery until she consulted with Dr. Fishman on May 27, 2011.  Therefore, even if Frazier had somehow informed Defendant of her need for surgery (which the record reflects she did not do), she could not have done so until after she had already been terminated.  Accordingly, there can be no causal link between her termination and any alleged discussion of her need for upcoming surgery.

Second, Frazier's claim that she was terminated for requesting FMLA leave in April 2011 also fails.  To begin with, Frazier has failed to establish a causal connection.  Although close temporal proximity is generally sufficient to establish causal connection, *see Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), here, Defendant informed Frazier in *January* 2011 of the timing and nature of the due process proceedings.  Frazier was thus made aware months before she made her request for FMLA leave that she could very well be terminated at the due process hearing if, by that time, she remained unable to perform the essential functions of her job.  Moreover, even assuming *arguendo* that Frazier has established a prima facie case, Defendant has offered a legitimate, non-discriminatory reason for her termination—that she was physically unable to perform the essential functions of a CSO.  Frazier has not set forth any evidence that this reason is pretextual.  Indeed, Frazier even conceded at her due process hearing that she could not perform the duties of a CSO and did not know when she would be able to do so.  Defendant is therefore entitled to summary judgment as to Count III.

**D.      Race Discrimination under Title VII, 42 U.S.C. § 1981, and the FCRA[5] (Counts VI, VII, and IX)**

Title VII prohibits an employer from discriminating on the basis of an individual's race. 42 U.S.C. § 2000e-2(a).  The FCRA likewise prohibits employment discrimination on the basis of race.  *See* Fla. Stat. § 760.10.  Finally, 42 U.S.C. § 1981 grants all persons, regardless of race, the equal right to make and enforce contracts.  Claims for unlawful racial discrimination brought under these statutes based upon circumstantial evidence are all analyzed under the *McDonnell Douglas* framework using the same evidentiary requirements.  *See Webb v. Int'l Business Machines Corp.*, 458 Fed. App'x 871, 876 (11th Cir. 2012) (Title VII); *Jefferson v. Burger King Corp.*, 505 Fed. App'x 830, 832 (11th Cir. 2013) (42 U.S.C. § 1981); *St. Louis v. Florida Int'l Univ.*, 60 So. 3d 455, 458-59 (Fla. 3d DCA 2011) (FCRA).

To establish a prima facie case of race discrimination, a plaintiff must show that:  (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) her employer treated similarly situated employees outside her classification more favorably.  *See Vessels v. Atlanta Independent School Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).  "Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action."  *Id.* at 767 (citation omitted).  "If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual."  *Id.* at 768 (citation omitted).  A plaintiff will

---

[5] Defendant's brief does not explicitly reference the FCRA claim.  However, because Defendant has indicated that it seeks summary judgment "on all counts," Doc. 28 at 1, and because race discrimination claims under the FCRA are evaluated according to the same standard as race discrimination claims under Title VII and 42 U.S.C. § 1981, the Court will proceed to analyze all three counts together.

survive summary judgment if she can present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (quotation marks and citation omitted).

Here, Frazier has failed to set forth a prima facie case of race discrimination.   It is undisputed that, as an African American, she is a member of a protected class.  And it is undisputed that she suffered an adverse employment decision when she was not given a permanent position at the Inactive Records Department.  However, she has not demonstrated that a similarly situated member outside of her protected class was treated more favorably than she was.

Importantly, although there is evidence that Frazier was qualified to work in a *light duty* capacity in the Inactive Records Department, there is no evidence that Frazier was capable of performing the duties of a CSO in the Inactive Records Department in a *regular* capacity.  Rather, the evidence supports that Frazier was *not* in fact capable of working in the Inactive Records Department in a regular capacity.  *See* Doc. 32 ("Heide Decl.") ¶ 8.  Frazier asserts that Morales was treated more favorably than she was when Morales was given a permanent position in the Inactive Records Department.  However, Morales was hired not in a light duty capacity but rather in a regular capacity.  *See* Heide Decl. ¶ 7.  Morales is therefore not a similarly situated individual because she was hired for a job that entailed duties Frazier was not capable of performing.

Moreover, Defendant has offered two legitimate, non-discriminatory reasons as to why Frazier was not hired for a permanent position in the Inactive Records Department.  To begin with, Frazier never specifically requested that she be transferred to such a position.  Indeed, contrary to her deposition testimony, the only request for a transfer made by Frazier was during her hearing when she vaguely inquired if there was something else she could do.  *Compare* Frazier Dep. at 44 *with* Hearing Tr. at 16.  Her failure to specifically apply for or request a transfer to the Inactive

Records Department is a legitimate, non-discriminatory reason for why she was not hired in that capacity.  Further, as Frazier has even acknowledged, there is no permanent light duty position in the Inactive Records Department.  *See* Frazier Dep. at 85.  The non-existence of the job for which Frazier may have been qualified to perform is another legitimate, non-discriminatory reason why she was not hired for it.

Frazier has failed to set forth any evidence that these reasons are pretextual or otherwise unworthy of belief.  And regardless, the circumstantial evidence, when taken as a whole, would not allow a reasonable juror to infer intentional discrimination.  Defendant is therefore entitled to summary judgment as to Counts VI, VII, and IX.

### E.      Workers' Compensation Retaliation (Count I)

Pursuant to the Notice of Removal, Defendant removed to this Court the entirety of the original Complaint, including Frazier's workers' compensation retaliation claim, brought under Fla. Stat. § 440.205.  *See* Doc. 1.  The Court, however, may not rule on the merits of this claim. That is because 28 U.S.C. § 1445(c) prohibits the removal of "[a] civil action in any State court arising under the workmen's compensation laws of such State."  As the Eleventh Circuit has held, Section 1445(c) divests a district court of subject matter jurisdiction over workers' compensation claims that have been removed, *see Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000), and thus, the prohibition against removal cannot be waived, *see Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982) ("[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties").

The parties do not dispute that Frazier's workers' compensation retaliation claim qualifies as a nonremovable action under 28 U.S.C. § 1445(c).  *Accord Shaw v. Ring Power Corp.*, 917 F. Supp. 2d 1221, 1222 (N.D. Fla. 2013) ("Florida district courts . . . have applied *Reed* to retaliation

claims under the Florida worker's-compensation statute.").   The Court, therefore, must sever and

remand this claim, Count I, to the Thirteenth Judicial Circuit Court in and for Hillsborough County,

Florida.   *See* 28 U.S.C. § 1441(c)(2) ("[T]he district court shall sever from the action all claims

[made nonremovable by statute] and shall remand the severed claims to the State court from which

the action was removed.").

## IV.   CONCLUSION

It is unfortunate that Frazier, a twenty-one year employee of the HCSO, suffered a

workplace injury that rendered her unable to continue in her position.   But the undisputed evidence

reveals that Frazier was simply incapable of performing the essential functions of her job, with or

without reasonable accommodation, and that the HCSO followed its well-established procedures

in reaching its decision to terminate her.   Moreover, Frazier must shoulder the blame for failing to

obtain any alternate position, because she never sought to engage in the interactive process or

apply for any open position despite having ample notice and opportunity to do so.   The board's

rejection of Frazier's vague, last-ditch request, made only after she learned of its decision to

terminate her, fails to raise the specter of discriminatory animus.   Accordingly, as to the Counts

properly before this Court, no genuine issues of material fact exist for determination by a jury, and

Defendant is entitled to judgment in its favor as a matter of law.

It is hereby **ORDERED AND ADJUDGED**:

1.   Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED** as to Counts

II through X.

2.   Because the Court has no jurisdiction over this state law claim, Count I of the

Amended Complaint (Doc. 20), only, is **SEVERED** and **REMANDED** to the

Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida for all further proceedings.

3.      The Clerk is directed to mail a certified copy of this Order to the Clerk of the Thirteenth Judicial Circuit, Hillsborough County, Florida.

4.      The Clerk is further directed to terminate all pending motions, enter judgment in favor of Defendant as to Counts II through X, and close this case.

**DONE AND ORDERED** in Tampa, Florida on April 14, 2015.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any